UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOSHUA SUMMERS,<br><br>Plaintiff,<br><br>v.<br><br>WASHINGTON STATE DEPARTMENT OF CORRECTIONS, a state agency, and LORELI SMITH, in her official and individual capacities,<br><br>Defendants. | CASE NO. 2:26-cv-01034-JHC<br><br>ORDER |

## I
## INTRODUCTION

Pro se Plaintiff Joshua Summers was convicted of first-degree child molestation and was released to community custody. He now takes issue with the directives of his Community Custody Officer and some of the conditions of that community custody. Before the Court is Plaintiff's Motion for Preliminary Injunction. Dkt. # 65. The Court has considered the materials filed in support of and in opposition to the motion, the rest of the file, and the governing law. Being fully advised, the Court DENIES the motion.

//

## II

## BACKGROUND

The following background derives from Plaintiff's motion for a temporary restraining order (Dkt. # 5) and motion for preliminary injunction (Dkt. # 65), along with Defendants' responses (Dkt. ## 41, 67), Plaintiff's replies (Dkt. ## 45, 71), and Plaintiff's operative Third Amended Complaint (TAC; in fact, the second amended complaint) (Dkt. ## 55, 75).[1]

A. Plaintiff's Community Custody

Plaintiff is on community custody under the jurisdiction of the Indeterminate Sentence Review Board (ISRB) following his guilty plea to first-degree child molestation. *See* Dkt. # 41-1 at 12, 16 (judgment and felony sentence of King County Superior Court case, committing Plaintiff to community custody); *id.* at 26 (ISRB order mandating Plaintiff's community custody). Under community custody, Plaintiff is subject to certain conditions of supervision. *See* Dkt. # 41-1 at 27 (listing conditions).

The ISRB imposed additional conditions on Plaintiff after he was found guilty of a violation in September 2023. *Id.* at 57 ¶ 6–7 (sworn declaration of Plaintiff's former CCO); *see also id.* at 42–43 (ISRB document titled "Order and Release of Conditions Addendum #: 1"). These additional conditions include the requirements to report his "internet-capable devices" on a special inventory form and to access the Internet only on the devices. *Id.* at 42. They also require him to "install any special software on [his] phone and computer required by" his CCO "in order to monitor [his] compliance with internet-related conditions imposed by the court

[1] "In deciding an application for a preliminary injunction, the Court is permitted to consider the parties' pleadings, declarations, affidavits, and exhibits submitted in support of and in opposition to the application." *Cal. Rifle & Pistol Ass'n, Inc. v. L.A. Cnty. Sheriff's Dep't*, 745 F. Supp. 3d 1037, 1048 (C.D. Cal. 2024) (citing *Republic of the Phil. v. Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988)).

and/or the ISRB. Phone and computer systems must be compatible with monitoring software." *Id.*

As a result, Plaintiff's former CCO required him to install software called "Accountable2You" (A2U) on his phone and computer. *Id.* at 58 ¶ 8. They also filled out the inventory form, listing an Apple-manufactured phone and tablet (presumably an iPhone and iPad), a MacBook computer, and a Nintendo game system. *See id.* at 45. That form reiterated to Plaintiff that he is required to install "any special software on your device that is required by [his CCO] in order to monitor [his] compliance with internet-related conditions imposed by the court and/or the ISRB at [his] expense." *Id.* It also reminded Plaintiff not to "engage in any activity that might limit access or change the appearance of data or images on your electronic device(s) without the prior approval of" his CCO" and not to "alter or destroy records of electronic device use" without CCO approval. *Id.* at 45. And it advised Plaintiff that his devices are subject to search by his CCO on reasonable suspicion of a violation of one of his conditions of supervision, provided that "there is a connection between the suspected violation and the object(s) searched." *Id.*

In February 2024, Defendant Loreli Smith became Plaintiff's CCO. *Id.* at 58 ¶ 11. Smith required Plaintiff to make her the "accountability partner" on A2U, permitting her to monitor Plaintiff's device and internet usage. *Id.* at 3 ¶ 9 (sworn declaration of CCO Smith).

B. Community Custody Violation at Issue

On November 18, 2025, Plaintiff called Smith to tell her that he had obtained a new desktop PC. *Id.* at 5 ¶ 14. Smith scheduled Plaintiff to visit the Burien field office on November 20 to update the inventory sheet. *Id.* During the appointment, Smith asked Plaintiff to open A2U on his iPhone, which showed a message that the iPhone was not being monitored. *Id.* at 5 ¶ 15. Plaintiff says that Smith did not provide a reason when she asked to see his phone. Dkt.

# 75-1 ¶ 19 (Plaintiff's sworn declaration). Smith then confiscated the iPhone because of her suspicion that Plaintiff had not complied with his conditions. Dkt. # 41-1 at 5–6 ¶ 15.

While searching the confiscated iPhone, Smith determined that it was not the one listed as approved on the inventory form in October 2023. *Id.* at 5 ¶ 17. When asked by Smith about this, Plaintiff "asserted three times that his current iPhone was the phone listed on the inventory," but "[e]ventually, [he] admitted that" he had replaced the prior, inventory-listed iPhone with the current one. *Id.* Plaintiff says that he acquired the new phone in October 2025. Dkt. # 75-1 ¶ 13. Smith did not receive any notifications from A2U regarding Plaintiff's new iPhone, nor did Plaintiff either ask her permission to purchase one or to add a new iPhone to his inventory sheet. Dkt. # 41-1 at 5 ¶ 19. Plaintiff says that he was "not aware" that he was required to report the new phone immediately rather than at the scheduled November 20 appointment, which he intended to do. Dkt. # 75-1 ¶ 13.

The next day, Smith and another CCO searched Plaintiff's MacBook and iPad at his residence. Dkt. # 41-1 at 6 ¶ 21. They discovered that Plaintiff had deleted messages on all three devices (the iPhone, iPad, and MacBook) and that the devices contained "evidence of sexually explicit material" as well as "evidence of a dating/sexual relationship" unapproved by DOC. *Id.* at 6 ¶ 22. Smith confiscated those devices because she determined that the found material violated the supervision conditions imposed on Plaintiff. *Id.* at 6 ¶ 23. Smith also told Plaintiff that he needed to replace his iPhone with an Android device because of the "known limitations of A2U on iPhones." *Id.* at 7 ¶ 26. As a result, Smith requested an ISRB hearing, to be held in March 2026. *Id.* at 7 ¶ 27. Smith kept the devices until the March hearing—about 110 days. *See* Dkt. # 75-1 ¶¶ 27–28.

At the hearing, Plaintiff was found guilty of two of the five violations with which he had been charged: possessing an unapproved internet capable device and deleting/altering text

messages and other material without approval. *Id.*; *see also id.* at 30–41 (written disposition). Smith then returned the devices to Plaintiff and told him that he could be arrested if he did not dispose of the iPhone in seven days. *Id.* at 8 ¶ 30. She then explained that he could either delete the offending material or perform a factory reset on the phone. *Id.* at 8 ¶ 31. Plaintiff requested that Smith write down her statements, but she declined, directing Plaintiff to his ISRB conditions of supervision. *Id.* Over the next two days, Plaintiff sent Smith "long emails" arguing that Smith's conditions were vague and had to be written down. *Id.* at 8 ¶ 32.

At a meeting on March 17, 2026, Plaintiff told Smith that he had given the iPhone to a third party for safekeeping, and Smith insisted again that "A2U is not fully compatible with iPhones." Dkt. # 41-1 at 8–9 ¶ 34. Plaintiff again asked where it was written that he could not possess an iPhone, stated that he did not want to get an Android phone, and that, further, he could not stop using applications like WhatsApp and Telegram, which encrypt communications and which Smith says are incompatible with A2U. *Id.* at 9 ¶¶ 34–35.

C. Procedural Background

On March 20, 2026, after reaching an impasse regarding the phone, Plaintiff sued Smith and the DOC in King County Superior Court under 42 U.S.C. § 1983. *See generally* Dkt. # 1-2. After Defendants removed the case to this Court, *see* Dkt. # 1, Plaintiff moved for an emergency temporary restraining order. *See* Dkt. # 5. The Court denied Plaintiff's TRO motion. *See* Dkt. # 49. Plaintiff then amended his complaint twice. He filed the operative complaint (called the third amended complaint on the docket, though it is only the second) on May 1st, 2026. *See* Dkt. ## 55, 75 (TAC). The core of Plaintiff's claims is that Smith's directives violate several constitutional liberties and state laws. *See id.* ¶¶ 25, 68–72 (First Amendment), 46–47 (Fourth Amendment), 52–55 & 64–66 & 80–81 (Fourteenth Amendment), 58–61 & 75–77 (state claims).

Plaintiff now moves for a preliminary injunction seeking to enjoin several actions he says that Defendants took against him. *See* Dkt. # 65.

## III

## DISCUSSION

A. Preliminary Injunction Standards

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 23 (2008). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate (1) 'that [they are] likely to succeed on the merits, (2) that [they are] likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in [their] favor, and (4) that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 20). "The Ninth Circuit has noted that interpretations of 'likelihood of success on the merits' include[] 'reasonable probability,' 'fair prospect,' 'substantial case on the merits,' and 'serious legal questions . . . raised." *Sierra Tel. Co., Inc. v. Reynolds*, 703 F. Supp. 3d 1163, 1190 (E.D. Cal. Nov. 27, 2023) (citing *Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012) (evaluating a motion for a preliminary injunction). Further, the Ninth Circuit has adopted a "sliding scale approach," which may allow for a preliminary injunction when a plaintiff can only show there are "serious questions going to the merits," but "'the balance of hardships tips sharply in the plaintiff's favor.'" *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011).

B. Analysis

Plaintiff asks the Court to enjoin Defendants from prohibiting his use of an iPhone and to require his CCO to explain the supervisory conditions in writing only. *See* Dkt. # 65 at 38. He also seeks relief regarding a search his CCO conducted, a directive she gave, her rejection of a

proposal related to his employment, and his ISRB-mandated device inventory sheet. *See id.* at 38–39. And he seeks a new CCO. *Id.* Plaintiff does not connect the arguments in his briefing to each specific request, and so the Court addresses them together.

1. Unclean hands

The Court determines that Plaintiff's requests for injunctive relief related to his use of Apple products are barred by the doctrine of unclean hands.[2] "A plaintiff asking a court for equitable relief 'must come with clean hands.'" *Northbay Wellness Grp., Inc. v. Beyries*, 789 F.3d 956, 959 (9th Cir. 2015) (citing *Johnson v. Yellow Cab Transit Co.*, 321 U.S. 383, 387 (1944)). It requires that a plaintiff seeking equitable relief "shall have acted fairly and without fraud or deceit as to the controversy in issue." *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1097 (9th Cir. 1985). Put differently, the doctrine "proscribes equitable relief when, but only when, an individual's misconduct has an immediate and necessary relation to the equity that he seeks." *Henderson v. United States*, 575 U.S. 622, 625 n.1 (2015) (citation modified). When a plaintiff seeks equitable relief to return his property, as here, "the owner of the property must have clean hands." *United States v. Kaczynski*, 551 F.3d 1120, 1129 (9th Cir. 2009).

Here, the record shows that Plaintiff concealed his acquisition of the iPhone for two months before meeting with his CCO. He says that he did not intend to do so, but that "Smith's demeanor" during their meeting "and the unexpected scope of the [device search] created an atmosphere of terror and fear," and that, because of the "state of intimidation," he "forgot to mention the new phone." Dkt. # 75-1 ¶ 21. This explanation avoids the main issue: He knew he had to report his devices, since he reported the new computer soon after purchasing it on November 18, 2025. *See* Dkt. # 41-1 at 4 ¶ 14. He has no explanation for why he did not call

[2] Defendants suggest that the doctrine of unclean hands bars Plaintiff's entire motion. *See* Dkt. # 67 at 8. But they fail to apply the doctrine to the remainder of Plaintiff's requests for relief.

Smith to report the new phone acquired two months before. Nor does Plaintiff explain why he first falsely asserted thrice that the new iPhone was already listed on the inventory sheet when it was not. *Id.* at 5 ¶ 17. And Plaintiff provides no explanation for the sexually explicit material Smith found on his devices, including his iPhone, a violation of his ISRB conditions. *See* Dkt. # 41-1 at 6 ¶ 22. That Smith found that material without an A2U alert beforehand raises the inference that Plaintiff accessed sexually explicit material on his unapproved and unmonitored iPhone. Given these circumstances, the Court cannot grant Plaintiff the equitable relief he seeks with respect to the Apple devices.[3]

2. Likelihood of success on the merits

Plaintiff fails to show that he is likely to succeed on the merits.

Plaintiff's first three arguments attack CCO Smith's directives for not being written. *See* Dkt. # 65 at 10–16 (Plaintiff's arguments). But oral directives are not "conditions" that must be written down by Washington law. They are explanations of his existing conditions. In any event, the written conditions themselves afford the CCO considerable latitude in restricting Plaintiff. *See* Dkt. # 41-1 at 42 (conditions requiring that "[p]hone and computer systems must be compatible with monitoring software" and that the CCO has discretion to require "any special software"). Plaintiff cites no case in which a court held that the practice of CCOs explaining conditions orally was contrary to Washington law. And while he claims constitutional vagueness, he cites no on-point authority. *See* Dkt. # 65 at 11.

Next, Plaintiff suggests that the conditions are not narrowly tailored to his conviction. *See* Dkt. # 65 at 16–24. He takes issue with the requirement that he use A2U on a compatible

[3] Thus, the Court does not consider Plaintiff's remaining arguments regarding Apple devices, such as his contentions that the (nonexistent) ban on Apple devices violates DOC policy and that the A2U vendor lists iPhones as compatible. *See* Dkt. # 65 at 20–22.

device (i.e., not an iPhone). *Id.* at 16. But under Washington law, conditions imposed to monitor compliance with other conditions (i.e., the use of A2U on a compatible device) must only be "narrowly tailored to serve the State's compelling interest in monitoring [the supervised individual's] compliance with valid conditions of his community custody." *State v. Nelson*, 4 Wash.3d 482, 505, 565 P.3d 906 (Wash. 2025). That compelling interest prevails "regardless of the specific facts" of the supervised person's underlying offenses, *id.* at 507, foreclosing Plaintiff's argument here. Dkt. # 65 at 16.

Plaintiff's cited cases do not rescue his position. The Court agrees with Defendants that Plaintiff's lead case, *Matter of Canter*, 35 Wash. App. 2d 798 (2025), fails to cite the Washington Supreme Court's conclusion in *Nelson* that a nexus is not required for supervision conditions intended to monitor compliance with other conditions. And *Matter of Eimer*, 36 Wash. App. 2d 1059, 2026 WL 497159 (Feb. 23, 2026), an unreported case that Plaintiff relies on, also appears to depart from *Nelson*, which controls.

Next, Plaintiff contends that directions on his ISRB-mandated inventory forms, prohibiting Plaintiff from altering or destroying data or records on his personal devices (Dkt. # 65-2 at 668–69 ¶¶ 7–8) are vague because they "reach routine software development operations" preventing his use of those devices. *See* Dkt. # 65 at 19. But the Court agrees with Defendants that these merely require Plaintiff not to affirmatively delete files, which the ISRB concluded he had done.

Plaintiff also contends that Smith's search of his devices in November 2025 was unreasonable since it lacked a basis. *See* Dkt. # 65 at 24–27. But the search was triggered by Plaintiff voluntary opening of A2U on his iPhone after Smith asked, and the display of the message that A2U was not monitoring the iPhone, providing Smith more than reasonable cause to search the phone. *See* Dkt. # 67 at 17–18. Plaintiff does not address this argument on reply.

Last, Plaintiff requests relief related to Smith's direction that he delete records of deleted messages (what he terms in his briefing the "remediation directive"), Smith's rejection of his teaching safety plan,[4] and for a new CCO. *See* Dkt. # 65 at 38 ¶ 4 (remediation directive), *id.* ¶ 6 (teaching safety plan), *id.* ¶ 7 (new CCO). But he makes no argument as to why he is likely to succeed on the merits of these claims beyond his general attack on Smith's directives to him. Thus, he has not shown that he is likely to succeed on the merits of these claim either.

3. Irreparable harm

Nor has Plaintiff shown that he will suffer from irreparable harm at this stage. This is an independent reason supporting denial of the motion.

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury'" for the purposes of the preliminary injunction analysis. *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). But as described above, Plaintiff has not shown a likelihood of success on the merits. Plaintiff argues that he can show irreparable harm in other ways, but each attempt fails.

First, Plaintiff asserts that he has lost employment opportunities because he lacks access to a phone. *See* Dkt. # 65 at 28–29. But he can remedy this situation by acquiring an A2U-compatible phone such as an Android, which means it cannot be the basis for a showing of irreparable harm. *See Wham-O, Inc. v. Manley Toys, Ltd.*, 2009 WL 1353752, at *1 (9th Cir. May 15, 2009) (finding no error in district court's conclusion that movant had not shown irreparable harm because "the purported harm could have been avoided through its own conduct[.]"). And lost employment opportunities are economic harms, which are not generally

[4] In September 2025, Plaintiff presented to Smith a "teaching safety plan," which he submitted in connection with his attempts to secure employment teaching computer science. *See* Dkt. # 5 at 73. Smith rejected because it "did not mitigate risk of unsupervised contact with minors (especially online contact), as required by his ISRB conditions."[4] Dkt. # 41-1 at 4 ¶ 11.

irreparable. *See Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974) (absent a "genuinely extraordinary situation," "difficulties in immediately obtaining other employment . . . will not support a finding of irreparable injury"). If Plaintiff succeeds on his claims, he may be entitled to compensatory damages. *See Smith v. Wade*, 461 U.S. 30, 52 (1983) (compensatory damages mandatory once liability found in a Section 1983 action).

Next, Plaintiff argues that he has suffered irreparable harm because Defendants' monitoring of his devices exposes his litigation work product to them. *Id.* at 29, 30–31. His evidentiary basis for these claims is a memorandum he wrote and provided to Smith on May 7, 2026, during the pendency of this litigation, wherein he said that Smith could see the data going into his "verification pipeline." Dkt. # 65-2 at 702. As best the Court can tell, since Plaintiff provides no clear explanation, he uses the verification pipeline to examine the A2U software and create exhibits for litigation. *See* Dkt. # 65 at 19 (reference to "the verification pipeline that produced" exhibits attached to the motion); Dkt. # 65-1 ¶ 34 (the pipeline "consumes the A2U portal exports" and "produces the analytical findings" submitted in exhibits). But Plaintiff knows that his internet-capable devices are monitored, as written in the ISRB conditions. Plaintiff's use of the pipeline software is done in the full knowledge that whatever data produced by it will be visible to the individual he chose to name as Defendant here. *Cf. Watson v. Albin*, 2008 WL 2079967, at *5 (N.D. Cal. May 12, 2008) (finding waiver of similar attorney-client privilege where the plaintiff used telephone line that he knew was subject to monitoring). Nor does he argue that he cannot pursue his claims without the use of the pipeline. And Plaintiff cites no case finding irreparable harm in similar circumstances.

Last, Plaintiff asserts that he has suffered psychological damage amounting to irreparable harm because of Defendants' conduct. *See* Dkt. # 65 at 30. His basis is a declaration submitted by a mental health professional. *See* Dkt. # 5 at 40–43. The declaration states that Plaintiff is

suffering emotional harm because of his adverse relationship with his CCO and because his supervisory conditions are not sufficiently reduced to writing. *See id.* at 42. The Court notes that much of the harm described is in part or in whole attributable to his own conduct. And Plaintiff cites no case directly supporting his position.

4. Balance of equities and public interest

"The third and fourth factors of the preliminary-injunction test—balance of equities and public interest—merge into one inquiry when the government opposes a preliminary injunction." *Porretti v. Dzurenda*, 11 F.4th 1037, 1050 (9th Cir. 2021). The balance of the equities concerns the burdens to a plaintiff compared with the burden on the defendant if an injunction is ordered, *id.* (citing *Winter*, 555 U.S. at 24–31), and the public interest mostly concerns the injunction's impact on nonparties. *Id.* (citing *Bernhardt v. L.A. Cnty.*, 339 F.3d 920, 931 (9th Cir. 2003)).

The Court concludes that the burden on Plaintiff is low. First, Plaintiff has been without an iPhone since November 2025. To the extent that he feels burdened by not having a phone, Plaintiff can acquire an Android (as suggested by Smith).[5] More broadly, Plaintiff challenges the status quo of his supervision, but he has not shown that this status quo is unbearable—he has not shown, for instance, irreparable harm arising from that supervisory status quo. Plaintiff characterizes his burden as arising from Defendants' purported transgressions of law, but as described above, the Court disagrees that Defendants have violated any law with respect to their supervision of Plaintiff.

---

[5] At points in his argument, Plaintiff suggests that his former CCO's apparent permission for him to use an iPhone means that Smith acted contrary to law in directing him to dispose of it. *See* Dkt. # 65 at 6 ¶ 4. But as described above, the ISRB conditions permit Smith discretion to set conditions on the kind of device Plaintiff may use. Plaintiff has not shown that this discretion is contrary to law, even when one CCO's judgment diverges from another's.

On the other hand, "[a]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S.1301, 1303 (2012). Plaintiff argues that the public interest lies with his position, since he seeks to enforce Defendants' compliance with Washington law and constitutional guarantees. But as described above, the Court disagrees that Plaintiff has shown that Defendants violate Washington law or the Constitution. Further, Plaintiff's requested injunctive relief would frustrate the state's supervision of individuals released on community custody, which would not be in the public interest. Supervised release, similar to Plaintiff's community custody, is generally "intended to promote the probationer's rehabilitation and to protect the public." *United States v. Bee*, 162 F.3d 1232, 1236 (9th Cir. 1998). The balance of equities and public interest considerations provide another independent reason to deny the motion.

## IV

## CONCLUSION

For the reasons above, the Court DENIES the motion.

Dated this 30th day of July, 2026.

John H. Chun
John H. Chun
United States District Judge